A. M. BUIE et al. *v.* T. C. POLLOCK, Surv. Exr.

**Executors — Final Settlement — Creditors.**

The final settlement and discharge, in the Probate Court by an executor, does not constitute a bar to the claim of a creditor who has a judgment against them as such.[1]

**Same — Duties — Devastavit.**

The first duty of an executor is to pay all claims established against the estate, and he should apply the assets of the testator, which comes into his hands, to the payment of the claims, and if he fails to do so he is guilty of a devastavit.[2]

**Same — Legatees.**

An executor has no right to retain anything received from the estate by him as legatee or distributee against a creditor of the testator.[3]

1

In such case, the administrator, who was also attorney of the party procuring such decree, will be required to refund so much of the fee allowed him therein as is excessive, together with commissions reserved out of the assets and 6 per cent interest on the amount to be paid. Vaughn *v.* Hudson, 59 Miss. 421.

It is no defense to the suit of the creditors, that the heirs who purchased the land in question have devoted a large sum of their money to the payment of complainant's judgment against the estate, and have received no return therefor from the estate, if there is still a balance due upon the judgment. Westbrook *v.* Munger, 64 Miss. 575; 1 So. 750.

An administrator who has been formally discharged may be sued on a claim against his intestate, which was duly probated, or of which he had

**Supreme Court — Judgments in — Errors of Practice.**

A mere matter of error of practice in a judgment of a Supreme Court, in a case cognizable in it and properly before it and where it has jurisdiction of the parties and subject matter, is not a subject of correction in another proceeding.[4]

**Administration of a Surety of an Executor — Liability on Bond — Final Discharge.**

The administrator of a surety on an executor's bond is not freed from liability to be sued on his bond as administrator of such surety, either by the final settlement of the executors or the final settlement of his administration of the sureties estate, and especially is this true when he has knowledge of a judgment against the executors before his final settlement.

Thomas C. Pollock, surviving executor of the will of one Calcote, filed the bill in this case in the Chancery Court of Copiah county, against A. M. and R. W. Buie, executors of Neil Buie, and J. M. Buie, administrator of Daniel Buie's estate, deceased,

---

notice, if it did not require probating, where he has assets in his hands, or has improperly distributed them. Barr v. Sullivan, 75 Miss. 536; 23 So. 772.

Code 1892, section 1063, making wrongful conversion by an executor a felony, does not apply to a refusal by an executor to pay a debt due from the estate on its reduction to judgment. State v. Pannell, 34 So. 388.

2

If an administrator make a final settlement of the estate, leaving unpaid debts duly probated, of which he had notice, he will be guilty of a *devastavit*. Allison v. Abrams, 40 Miss. 747.

A judgment against an administrator in his representative capacity is no evidence of a *devastavit;* the judgment only establishes the liability of the estate and the duty of the administrator to pay it out of the assets. Vick v. House, 2 How. 617.

When the declaration against an administrator for a *devastavit* in not paying a judgment rendered against him, shows assets and a *devastavit* to a greater amount than the plaintiff's debt, and the evidence shows the same, it will not be error if the verdict do not find the amount of assets wasted, but is simply for the plaintiff for the amount of the debt. Lee v. Gardiner, 4 Cush. 521 (citing Hoggatt v. Montgomery, 6 How. 93).

If the declaration aver the sufficiency of assets, the *devastavit*, the recovery of the judgment at law against the administrator on plaintiff's demand against the intestate, and that it is unsatisfied, and a demurrer be interposed to it, and overruled, and judgment by default enters, the judgment may be final without writ of inquiry—the *devastavit* and the amount of it being admitted by the demurrer. Hoggatt v. Montgomery, 6 How. 93.

When there are two or more executors, each has a several right to the assets of the estate, and is solely responsible for what he receives. One is not liable

one of the sureties on the bond of the said executors and the heirs at law of David Buie, another surety. The bill charges that complainant obtained a judgment against A. M. and R. W. Buie, executors of Neil Buie, rendered in the Supreme Court, February 1, 1875, on a verdict found by a jury April 20, 1876, in the Circuit Court of Copiah county for $1,866.20 with interest and costs; that execution had been issued on said judgment and returned

for a *devastavit* committed by the other, unless he consented to the same, or negligently omitted to take any steps to prevent it. Gaultney *v.* Nolan, 33 Miss. 569.

A creditor of a decedent having obtained judgment against the administrator, and being unable to procure satisfaction out of the goods of the intestate, may, under section 1180, Code 1871, maintain suit against the administrator and the sureties on his bond in a court of law, for a *devastavit*, without waiting for final settlement in the Chancery Court. The right of a creditor in this respect differs from that of a distributee, who has an interest only in the surplus, after paying creditors, and this cannot be ascertained until there has been an accounting in the Chancery Court. Dobbins *v.* Halfacre, 52 Miss. 561.

A creditor of an estate whose judgment is against an administrator *de bonis non,* can make this the basis of a suit on the bond of the administrator in chief for a *devastavit* committed by the latter. And such judgment need not be revived in the name of the administrator of the first administrator, if he be dead, in order to become the basis of a suit against his sureties for a *devastavit*. (Ruff *v.* Smith, 31 Miss. 59, overruled.) Pilcher *v.* Drennan, 51 Miss. 873.

3

"When the claims are all registered and allowed, or established, and the amount of assets ascertained, the court shall proceed to ascertain, through the clerk of the court, the pro rata share of each creditor, deducting first the expenses incurred in the last sickness, and funeral expenses, and court costs, and deducting from debts not due the legal interest, from the time of payment up to the time of their maturity; but such deduction shall only be made on the amount of the distributive share; and when the distributive share of each creditor is ascertained, the executor or administrator shall immediately proceed to distribute all money in his hands amongst the respective creditors, in proportion to their respective demands, and shall thereafter continue to make such distributions, as money may come into his hands from the estate, until the whole is distributed. Code of 1871, § 1162. See also Code of 1880, § 2060; Code of 1892, § 1944; Code of 1906, § 2118.

Rents from mortgaged property of an insolvent estate cannot be partitioned among residuary legatees to the exclusion of creditors of the estate. Tishomingo Savings Institution *v.* Carr et al., 1 Miss. Dec. 364.

An administrator has a right to retain for a balance due him on final settlement, a note of the estate. Prestidge *v.* Pandleton, 6 Cush. 379.

If an executrix appropriates assets of the estate, she must show a clear

*nulla bona;* the bill charges various acts of *devastavit* committed by the executors to an amount greater than the judgment, and that a large amount of property of the estate of Neil Buie, deceased, came into the hands of defendants, or those whom they represent in privity.

A. M. and R. W. Buie answered, in which they denied that any valid judgment was ever rendered against them, as charged in the bill by the Supreme Court; they aver that on February 1, 1875, the Supreme Court of the State of Mississippi did assume to render what purported to be a judgment in said suit, but that said judgment was and is wholly void; that the said Supreme Court had no jurisdiction of the subject matter or the parties for the rendition of judgment by said court for the amount of their alleged indebtedness to said Pollock, executor; that a suit was instituted against these respondents as executors of the will of Neil Buie in the Circuit Court of Copiah county in September, 1866, and at the April term, 1867, on a trial of said cause a verdict was rendered against them by a jury whereon judgment was rendered, but which judgment was set aside by the court at the same term of the court and a new trial granted; that at the April term, 1868, and after a new issue was joined and on an additional plea of payment, there was a second jury trial which resulted in a

right thereto, or they may be subjected by creditors of the testator.    Buckingham *v.* Wesson, 54 Miss. 526.

It is the duty of an administrator to raise money by sale of personal property to liquidate debts of the estate.    It is a violation of his trust to distribute money or personal property with a knowledge that there are outstanding facts.    Foley *v.* McDonald, 46 Miss. 238.

If an executor delivers money or property to the legatees before paying debts of the estate, the creditors by such breach of trust do not lose their right to follow the property, but may, in equity, treat the legatees of such assets as trustees with the same responsibility as the executors.    Buie *v.* Pollock, 55 Miss. 309.

4

The Supreme Court is without power to correct its own judgment at a subsequent term on account of any error of law or of fact, although to prevent a failure of justice it will sometimes correct a judgment at a subsequent term, where the circumstances are peculiar and exceptional, as in the case of fraud on the part of the person obtaining the judgment, the failure of the judgment as entered to accord with that intended to be entered, some misconception by the court of the case made in the record, or other circumstancs of like nature. Cotton *v.* McGehee, 54 Miss. 621, cited.    LeBlanc *v.* Railroad Co., 73 Miss. 463; 19 So. 211.

verdict and judgment for the defendants and a motion for a new trial was overruled, to which plaintiff excepted and a writ of error was prosecuted to the Supreme Court at the May term, 1870, and the judgment was reversed and the cause was remanded for a new trial; that subsequently at another term of said court the cause was again tried and resulted in a second verdict and judgment for defendants, and a motion for a new trial was overruled and plaintiff prosecuted a writ of error to the Supreme Court, and on this appeal the Supreme Court on the 1st day of February, 1875, reversed this judgment and then undertook to render a final judgment for plaintiff on the verdict of the jury at the April term of the court of Copiah county of 1877; that if it was competent for the court to ignore and avoid the effect of the judgment in 1870, remanding the cause and awarding a *venire de novo,* still it was too late to consider error occurring prior to the date of the rendition of the judgment in the Circuit Court in April, 1867, as more than three years had elapsed from that time to the time of the last appeal, whereby all errors, if any existed, had been cured; and the case was not one wherein the court could, by law, in February, 1875, render a final judgment, and that the said pretended judgment was therefore void. The executors also pleaded in bar of the suit that long prior to the pretended judgment and prior to the commencement of said suit, these respondents, in the year 1866, as executors of the will of Neil Buie, after giving the notice required by law, made and filed in the Probate Court their final settlement as executors, which was by that court approved and confirmed, and respondents were finally discharged as executors. They deny that they committed any *devastavit.*

J. M. Buie, administrator of the estate of Daniel Buie, answered the bill, and pleaded in bar of the suit that long before the commencement of the suit he was discharged from the trust as administrator of the estate of Daniel Buie, deceased, by the Probate Court of Copiah county, and that said discharge was in all respects according to law.

The other defendants answered, denying that the executors committed any *devastavit* and denying the other material allegations of the bill, also pleading in bar of this suit the final settlement and discharge of the executors of the will of Neil Buie before the commencement of the suit.

From a final decree against A. M. and R. W. Buie and J. M.
Buie, administrator of the estate of Daniel Buie, and dismissing
the bill as to the other defendants, this appeal is taken.

Appeal from Chancery Court, Copiah county.  E. G. Payton,
Chancellor.

Affirmed, March 14, 1881.

*Attorneys for appellants, Sessions & Cassedy, and R. H.
Thompson.*

*Attorneys for appellees, H. B. Mayes, and Harris & George.*

Brief of Sessions & Cassedy:
We rely confidently upon the invalidity of the judgment of the
Supreme Court in 1875.   An ·attempt was made by us in this
court, by motion, to vacate the judgment (proceedings being in
the nature of writ of error *ceram nobis*), which was not success-
ful.   The court delivered no written opinion.   Judges Harris and
George, in their brief, claimed that whatever merit there might be
in the proposition that it could only be presented when the judg-
ment (which we claimed to be void) came under review in some
other suit.   The question is presented by the answer to the bill of
complaint in this case and the record discloses the evidence, so
that the question is now fairly presented and there can be no
technical objection to its consideration.   *   *   *
We have carefully examined the brief of Messrs. Harris and
George, on the motion to vacate, and with all deference we submit
that what they have to say as to the "practice" and the right
to review on a second appeal or assignment of error not considered
on the first, does not meet the question and that it is an evasion
of the logical issue.   As we conceive, the Appellate Court hears
the case anew on the same evidence and pleadings as set forth in
the record—the lower court determined it—the Appellate Court
on this second hearing determines it.   The inferior court could
not at the next succeeding term, or after five years, recall its first
judgment or give another, or add to the original judgment.   Can
the Supreme Court do it because it is some degrees advanced on
the judicial roster ?   Can the Supreme Court by indirection (and

on an intimation from counsel that the litigation is unnecessarily protracted), after the time for an appeal has expired—more than three years—say, that while the first judgment is not appealed from now, and while we have settled that question on an appeal heretofore made—yet for convenience sake, and because it has been intimated to us that the litigation is vexatious, etc., and because it may be no jury can be found to give the plaintiff another verdict, that therefore we will leap the chasm, and although we have heretofore reviewed this case and reversed and remanded it, and there has been in accordance with that decision a new trial and verdict, yet we will reinstate the first verdict—we will reconsider our hasty action of five years ago—we made a mistake then and will rectify it now? On the second appeal the case was a new and distinct one, as far as all questions in it on the first appeal are concerned, and as to that we suggest the maxim *"Finis rei attendendus est."*

Aside, however, from the point hereinbefore presented, we think we are fully justified in asking a reversal of the judgment appealed from. The court will notice as to the facts, that: Letters testamentary were granted November 6, 1861, to A. M. and R. W. Buie; that notice of publication to creditors to present claims was made on January 16, 1862; that there was partial distribution made in January, 1862; sale of cotton, etc., for distribution May 9, 1863, part at private sale and part at public sale, by order of Probate Court; petition for final settlement, filed April 4, 1865, some four years after grant of letters; suit brought by Pollock, executor, etc., on the claim which is the foundation of this action, September 20, 1866, more than a year after the final settlement by these executors, and that, too, on a claim never probated, as it appears to have been sworn to, but never allowed, by Probate Judge. An "untechnical" statement of this case would be that Buie and brother took out letters testamentary on the estate of their father, a large estate supposed to be out of debt, except as to insignificant amounts—they, as soon as practicable, by the authority of the Probate Court, after paying the debts, distributed the slaves and other personal property, paid all the debts they knew of or that were probated or presented, then had an order for partition of the lands, which was made, and finally, supposing they had performed their whole duty, they applied for and made final settlement as executors and were discharged. More

than a year thereafter, to their astonishment, suit was brought by T. C. Pollock, executor for the estate of Calcote, on a claim never probated and of which they had no actual knowledge. In addition it will be seen from the agreement of counsel in the record in this case, that the records in this case now on file in the Supreme Court, heretofore determined that a settlement was had with Mr. Pollock by the executors after the death of their testator —a debt due by Pollock as executor paid by him, and nothing said then as to any counter-claim—thereafter, and after the final settlement, Pollock discovers this claim that he had overlooked and brings his suit as before stated more than a year after the executors of Neil Buie had in good faith and in entire ignorance of that claim, made a final settlement. All the property of the decedent had then passed out of the hands of these executors by distribution; they were surprised by this claim and have interposed whatever defense they could, from time to time. In this surely they have done nothing amiss morally. The war had intervened, property had been swept away, and refunding bonds, because of its vicissitudes, had become worthless. We feel confident that an examination of this record and of the antecedent records in this case in this court now (and made a part of this by agreement), will satisfy the court that we are correct in the version we give.

And we earnestly ask the court to thoroughly review this case in all its phases (as all of the records are now before you), because we hope to have an end of this litigation.

We desire to suggest, not to argue, the following points, the significance and importance of which will occur to the court:

First, There is no breach of the condition of the bond here, and as to this bond, the executors and their sureties can interpose the same defense, whatever protects the surety protects the principals. The condition is that the executors shall perform and discharge all of the duties required of them by law or by the order of the court.

We conceive that the intention of the legislators was, that the court should share the responsibility of an administration, and that an executor or administrator should not be required to engage in a venture by administering, that might ultimately, because of his unfamiliarity with legal modes, involve or ruin him—the meaning of the clause in the bond where it is stated in the dis-

junctive, that if he shall "perform," etc., the duties "required by law" or the "order of the court," is that the judgment or the decree of the court should be a shield to him when doubts surrounded him as to his course. In truth, the Legislature never contemplated that an executor or administrator should be required to solve all the legal puzzles that might beset him during his administration —a tribunal was provided to do that, and the English of the bond is that if he "performs" the "order of the court" he is protected. The chancellor (Judge Peyton), in the inferior court, seeks to escape the effect of this condition of the bond in the written opinion delivered by him, by referring to the petition of these executors for distribution of the estate, in which they represent that the estate is in "no wise embarrassed," holding that that was a fraudulent representation on their part, and that an order of the court thus secured could be no protection to them under the condition of the bond. Whatever weight this suggestion may be entitled to, if the facts sustained it, I will not stop to discuss, but it is an assumption that these executors fraudulently made such representation in their petition for distribution. The truth is, that that representation, made after a settlement with Pollock, in which he paid what he owed the estate of Buie and in which he never intimated a counter claim, and after his failure to probate and register his after discovered claim, was made in the utmost good faith, and the haste under these circumstances to reach these executors by execution, it seems to us, does not savor of equity or justice.

Second, It cannot be said that it is now too late to show publication of notice to creditors, for this is the first time the sureties have had that opportunity. All are equally liable on the bond, judgment must go against all, if at all. The principals have the same defense that they have.

Third, After twelve months, the legatees could have compelled distribution by giving refunding bonds—the executors are not blameable for doing what they could have been compelled to do.

Fourth, There is no breach by the conduct of the executors, and in answer to argument that there was, we say the remedy is on the refunding bonds, which are set out in the record in full. It may be true that the vicissitudes of war have rendered bonds, once good, worthless, but are we to wreck these executors and their

sureties because of that? See the depositions as to the solvency of the bonds when given if a point is made on that.

Fifth, These executors have long ago been discharged on that final settlement, and this *post mortem* examination must be measured by the rules laid down by this court in this case heretofore; see Pollock *v.* Buie, 43 Miss. 155, and Buie *v.* Pollock, 54 Miss. 11; also Opinion Book for the same case on another appeal not reported.

Sixth, It was claimed by Judge Mayes in the court below and may be here, that there was a failure to account for 110 bales of cotton in the final account, and he has some testimony as to the value of cotton at that time or thereabouts. The court will observe from the record that an order was obtained by these executors for the sale of that cotton at private sale in May, 1863, and it was accounted for in October, 1865, at the settlement of executors. * * *

Brief of R. H. Thompson, for appellant, Jno. M. Buie:

It will be seen from the record that not only has the estate of Neil Buie, deceased, of which A. M. & R. W. Buie were executors, been fully settled, but also that the estate of Daniel Buie, deceased, who was a surety on the bond in suit, of which estate J. M. Buie was administrator, has also been finally settled, and said administrator fully discharged.

To maintain the decree in the case is to ignore and set aside not only the final settlement of the Neil Buie estate, but also to ignore and set aside the final decree adjudging the estate of Daniel Buie fully administered and discharging the administrator.

As regards the status of administrators and executors after final settlement, it is carrying the doctrine of the continuance of the trust a long ways to hold that the decree below is correct.

The general doctrine is, that when an administrator has presented his final account and been discharged, he is no longer the representative of the estate and has no authority to bind it in any manner. Willis *v.* Farley, 24 Cal. 490.

He could not bind the estate by a contract or by a suit prosecuted by him as a plaintiff. How can the estate be bound by a judgment against him? The judgment could only be levied (as an exception to the general rule) of goods in his hands yet unadministered. It is a good defense, therefore, to show that he has

no goods. This would have been a good defense to A. M. and R. W. Buie; it certainly is good for John M. Buie. Williams on Exrs., 2060, and notes; Toller on Executors, 495.

But to notice the decree in holding J. M. Buie, particularly: There must be some end—some place at which it can with confidence be said that an administrator is *finally* discharged.

If two estates may be opened, why not three, or a dozen? John M. Buie may be sued on his bond, and the estates of his sureties, though finally settled, would, according to Pollock's way of thinking, be liable, and so on without end.

Such a doctrine absolutely unsettles titles to land. No administrator can tell when an estate is fully administered, if all possible contingent liabilities are a charge on the fund. No person can safely buy land which has been inherited or devised. There can be no innocent purchasers, for all have to trace title from ancestor to heir; and have to make the inquiry at their hazard as to whether it descended with or without a burden. The decree of the Probate Court cannot be relied on, etc. Such a doctrine ought not to receive the sanction of the courts.

When J. M. Buie, administrator of the estate of Daniel Buie, came to make final settlement of that estate he found all creditors of the estate paid; and even as to contingent liability on this bond, he found of record a decree discharging the principal in the bond.

The question now before the court, so far as J. M. Buie, administrator, is concerned, would seem to be within the maxim that "the act of the court damages no one." Does it not fall fairly within the principle that rights acquired under a judgment while in force are not affected by a subsequent reversal or vacation? Taylor *v.* Boyd, 3 Ohio, 337.

According to Pollock *v.* Buie, 43 Miss., the final settlement of the first estate is perfectly valid as to all but creditors of that estate. Pollock was not a creditor of the estate of Daniel Buie, of which J. M. Buie was administrator. His right against the estate of the surety was conditional and contingent, and negatived by a decree of a court.

But again: The condition of the bond on which J. M. Buie's intestate was a surety (the bond in suit), was that the principal would faithfully administer the estate according * * * *or* the decrees of the Probate Court. Is it possible that J. M. Buie,

administrator of one of the sureties on the bond, is liable after the final settlement of the two estates *according to the decrees of the Probate Court?*

Finally, Pollock's judgment is void.

Brief of H. B. Mayes:

It is assigned for error that "The court erred in rendering final decree for the appellee."

In support of this assignment it is objected: That on the 20th of April, 1867, appellee obtained a verdict against the executors of Neil Buie for $1,866. That on motion of the executors this verdict was set aside, and a new trial granted, to which appellee excepted. That at the next term of court a verdict and judgment for the executors was rendered, a motion by appellee for new trial overruled, another bill of exceptions taken, and a complete record presented to the Supreme Court, the appellee bringing the whole case before it by writ of error. That at the May term, 1870, the Supreme Court reversed the judgment below and rendered the cause for a new trial.

It is insisted by appellants that the judgment reversing and remanding was a final adjudication of the several questions presented by the record, and cuts off the power of the Supreme Court to reinstate the first verdict. That the matter was *res adjudicata,* and the judgment thereon for appellee on the first of February, 1875, is therefore void.

The objection is not tenable. "The judgment or decree of a court of *dernier resort* in a particular case is final and conclusive upon all other courts, not only as to the merits of the cause, but the jurisdiction of the court, and is conclusive whenever the same is again drawn into controversy. But the exception to this rule of conclusiveness is that it does not apply to points not under consideration, or incidentally considered, or which can only be argumentatively inferred from the judgment." Herman's Law of Estoppel, p. 36, § 42.

The judgment set up in estoppel is within the exception. I will examine it. It is reported in 43 Miss. 140. Three errors are assigned, to wit: "The court below erred in sustaining the motion for a new trial and in setting aside the verdict of the jury." Second, The court erred in granting the instructions asked for by the defendants in error at the trial before the jury at the April

term, 1868, thereby misleading the jury as to the law of the case. Third, The court below erred in overruling the motion for a new trial at the April term, 1868, and in giving judgment on the verdict of the jury then rendered in favor of defendants in error.

On page 150 the court distinctly states the points considered, thus:

The record in this case presents two important questions for our *decision.* First, Was the decree of the Probate Court on what purported to be a final settlement of the account of the executors of the last will and testament of Neil Buie, deceased, void for want of notice to the parties interested? Second, And if said decree was not void, did it constitute a bar to the plaintiff's action against said executors?

The court then proceeds to decide these two questions, and on page 157 announces the result, thus:

"Upon the whole we have arrived at the conclusion that the settlement of the executor's account in the Probate Court, though valid as to the parties to it, is not a bar to the plaintiff's action in this case. And *for that reason* the judgment must be reversed, the verdict set aside, and the cause remanded for a new trial, upon which the plaintiffs' action will be subject to all the defenses arising from the statute of limitations, payment or otherwise, to which any executor or administrator would be entitled when sued by a creditor in the course of administration."

No judgment was pronounced on the first assignment of error, and if the conclusion is reached at all, that the question presented by it was adjudged, we argue and infer it from the fact that final judgment was not pronounced for the plaintiffs in error, but the cause was remanded. This brings the judgment relied on as an estoppel, within the exception to the above rule. Herman's Law of Estoppel, p. 36, § 42; p. 18, rule 4, pp. 25 and 26, close of § 29; p. 100, § 95; p. 35, close of § 40.

The cause thus remanded was again tried; a verdict and judgment given for the executors. The plaintiff excepted and took his second writ of error, bringing the entire record again into the court. The fifth assignment of error is: The court erred in granting a new trial to the defendants after the first trial, and final judgment should have been rendered on the first verdict for the plaintiff. The objection urged on this assignment, to judgment on the first verdict, is the objection now raised to the

validity of the judgment of the Supreme Court reinstating the first verdict and giving judgment thereon for the plaintiff. The present objection comes too late, the question is *res adjudicata*.

That it may be seen the point was distinctly raised and deliberately considered, I give below the argument of counsel *pro* and *con* the fifth assignment, which I find in Pollock *v.* Buie, No. 900. Record filed April 12, 1873.

"Lastly it is manifest that final judgment should have been rendered on the first verdict. The statute authorizes parties to except to the granting or refusing a new trial. The result is that although the second or last trial may terminate unfavorably to the party who obtained the first verdict, yet if the court below erroneously set aside the first verdict, that verdict will be sustained, and final judgment rendered on it by this court. Prewett *v.* Coopwood, 30 Miss. 369; Moore *v.* Ayers, 5 S. & M. 310; Wood *v.* Life Ins. Co., 7 How. 609; Frizelle *v.* White, 5 Cush. 198.

"The decision of this cause in 43 Miss. clearly shows that the first verdict was correct. The action of the court in setting it aside was manifestly wrong. The subsequent trials serve to show that the first verdict was correct. The defendants have not been able to bring forward any additional facts to strengthen their defense on the first trial or to make out any other. The court below has continued to err in its judgment on the defense first made, and has seemed determined to make it good, notwithstanding the explicit ruling of this court in regard to it. The plaintiff took exception to the granting of the first new trial, and his exception is in the record now before the court, and should the court have any doubt about the technical rules as to the manner of dealing with the last verdict, it is plain from the whole record that the plaintiff is entitled to judgment. This should have been done when the case was before the court on the second writ of error, and that judgment was asked by counsel then. The omission to grant it then does not affect the power of the court to grant it now. It is a striking fact that the jury in this cause, from the beginning to the end, has never had a question of fact legally before it, if we except the existence of the bond sued on." Brief of Harris & George, filed February 24, 1874, in No. 900.

REPLY.

"I thought it sufficient reply to the fifth assignment of error in my original brief to point to the case of Pollock *v.* Buie, 43 Miss. 140. I must call the attention of the court to the fact that this assignment has been twice acted upon, thought irregularly the first time. From the first new trial granted, the plaintiff improvidently took his writ of error, and this court affirmed the judgment, granting the new trial. This judgment the Supreme Court set aside and remanded the cause for further proceedings. In the case in 43 Miss. 140, the first error assigned is that 'The court below erred in sustaining the motion for a new trial and in setting aside the verdict of the jury.' It will be seen, by looking to pages 149 and 150 of the opinion, that the chief justice did not overlook or pass unnoticed this assignment, and if it had been regarded as well taken the case would certainly not have been remanded for a new trial, but there would have been judgment on the first verdict for the plaintiff. I would, moreover, call the attention of the court to the first bill of exceptions, which states that: Plaintiff read to the jury the declaration, pleas and instrument sued on, filed in this cause with the declaration, and here rested his case. The instrument sued on was not copied in the bill of exceptions." Brief of H. B. Mayes, filed February 24, 1884, in No. 900.

The decision of the court was by Chief Justice Peyton, who delivered the opinion in 43 Miss. After stating the case fully, he says there are "five assignments of error, of which we shall notice only the two last." He disposes of the fourth, and of the fifth says: "This assignment is made under the Code of 1857, article 166, which is carried into the Code of 1871, section 648, which provides," * * * "The statute was designed to operate mutually as well for the party against whom the new trial was granted as for the party against whom it might be improperly refused. The remedy was intended to correct a mischief or to prevent it in granting of new trials against verdicts obviously supported by law and evidence. The case before us comes within the terms of the statute. Here was a verdict set aside which was obviously right on the law and the evidence, and the party in whose favor it was rendered assigns the granting of the new trial as error. His case is within the very letter and spirit of the

statute, and we have no alternative but to sustain him.    The last verdict is not sustained either by competent evidence or law, whilst the first is sustained by both."

The judgment below is reversed, the first verdict reinstated, and the judgment thereon of first February, 1875, pronounced by the court, which in a court of the last resort should be decisive of the objection now taken to its validity, and finally settle the question of jurisdiction, if anything decided by this court can be *res adjudicata*.

To remaining objections made to the decree of the court below it is replied:

1.    The judgment of the Supreme Court reinstating the first verdict and giving judgment for Pollock, February 1, 1875, precluded any inquiry behind it of matters of defense, such as limitation in bar of the claim in controversy, payment, or discharge by final settlement.    These defenses should have been made and were made and urged in bar of the judgment at law.    They are *res adjudicata*.

2.    The objection that the writ of error to the Supreme Court on which the judgment was given on the first verdict was barred by limitation comes too late after judgment.    It should have been set up by plea in the Supreme Court in bar of the judgment of February 1, 1875.    Hendricks *v.* Pugh, 57 Miss.

3.    There was no admissible evidence before the chancellor that John M. Buie, administrator of Daniel Buie, had finally settled and distributed Daniel Buie's estate, and no evidence of the date of settlement if made.    It distinctly appears, however, by his testimony, that he knew in the lifetime of Daniel Buie that he was surety on the bond of Neil Buie's executors.    That he knew before his final settlement that Pollock had instituted suit against the executors.    He had notice of his contingent liability to pay, and knew if Pollock established his demand and failed to obtain satisfaction out of Neil Buie's estate because of a *devastavit*, and the executors failed to pay, that the estate of his intestate would be liable because of the suretyship, and he should have provided for this contingency.    Pollock had no demand on the estate of Daniel Buie which would admit of probate, but such as he had John W. Buie had notice of it, and on a proper showing to the court before or on final settlement it would have been so provided as to protect him and all parties interested.    He

is equally liable for this as for any other demand on the estate of his intestate of which he had notice before distribution of the assets. Pollock *v.* Buie, 55 Miss. 312.

4. The jurisdiction of the Chancery Court of Copiah county to make the decree appealed from in this case is also settled by the above case in 55 Miss.

5. Of the *devastavit* by the executor of Neil Buie the record is conclusive.

The 7th November, 1861, letters testamentary were granted to them. On the same day they petitioned for distribution of the personal property, alleging that the testator was in no wise embarrassed, and that no detriment would accrue from an early distribution of the personal estate, *except the cotton,* among the legatees. Citations were executed on the two infant legatees and guardian *ad litem* appointed to them. The other legatees waived in writing notice to them by citation and consented that distribution be made. Distribution was ordered, and the 15th of January, 1862, two months and eight days after the grant of letters, distribution was made of property valued at $56,344.50. There were nine shares, value $5,788.27½ each, of which the executors took two shares—aggregate value $11,576.55.

April 6, 1863, they petition for an order to sell remaining personal property, consisting of compass and chain, corn sheller, and ox. The petition shows that there are 110 bales of cotton; states compass and chain, corn sheller, and ox are incapable of division in kind, and that the cotton should be sold for distribution of proceeds among legatees.

January 5, 1864, the sale of the property, except the 110 bales of cotton, is reported. Proceeds of sale $117, all of which they report paid. Of this sum the executors' share is two-ninths—aggregate, $26.

December 7, 1863, E. C. Covington et al., heirs and legatees, file petition for partition of 1,265 acres of land. On 6th September, 1864, partition is ordered. On 29th November, 1864, partition is made into eight shares, valued at $1,600 each. Two shares are allotted to the executors, aggregate value $3,200.

April 23, 1862, after distribution, the appraisement is returned. In it the executors charge themselves with 110 bales of cotton appraised at $4,000. April 6, 1863, they file their first annual account. This cotton is still on hand. January 5, 1864, when

they report sale of personal property to the value of $117, the cotton is not sold. April 5, 1865, the executors file their final account and ask credit by the appraised value of 110 bales of cotton, $4,000.

This cotton should have been sold and reported to the court. The executors could not take it at the appraised value. In 1865 this cotton was worth three times or more its appraised value in gold, for which the executors should account.

The distribution of personal property when made could not have been coerced. It was a voluntary distribution, by which the executors wrongfully gave to the legatees the property they received and converted to their own use $11,576.55. This property is still a trust fund for payment of debts in the hands of the executors as if distribution had not been made. Pollock v. Buie, 55 Miss. 314.

In their final account the executors ask commissions on $88,-603.50 at 4 per cent. They have executed the will to the other legatees and themselves. They have appropriated to themselves $18,347.55.

Yet when execution goes against these executors for a sum due from the estate of Neil Buie to Pollock, it is returned by the officer, *nulla bona*.

Brief of Harris & George:

On motion to vacate the judgment of the Supreme Court rendered 1875.

The ground of this motion is that the court had no power, because no jurisdiction, to render a judgment on a verdict set aside by the Circuit Court, because this court, in failing to render such judgment on a previous writ of error in the same cause, by the same party, had impliedly affirmed the action of the Circuit Court in setting aside the verdict.

We say that whether the question is one of power or of practice this court in 1875 decided that it was allowable in practice, and that the power existed, and its judgment in the particular case cannot now be questioned on either point; because the judgment was demanded by the plaintiff in error and resisted by the defendant in error on the identical ground stated in this motion, to wit: that having passed the error without notice on the former

writ, it was an affirmance of the action of the Circuit Court complained of.

The opinion of the court shows that the chief justice was familiar with the history of the cause in this court. The time to have made the objection was the time it was made, and it was plainly overruled from the very necessity of the case.

That the court had jurisdiction of the subject is clear. The case stood on a writ of error and the proper parties were before the court. How far the former writ of error and judgment limited the inquiry as matter of law and practice was a matter which the court clearly had the right and power to decide and has decided it for the particular case.

As to what is the true rule in such a case, we have this to say: That the fact that the court has had the record before it on a previous writ of error and failed to notice an error in the record, though relied on, does not cure the error. As, for example, where there is no cause of action stated in the bill or declaration on which the court is authorized to give a judgment or decree.

If in this case the court had, on the first writ of error, found no error in the second verdict and ruling of the court as they stood on their own ground, then its refusal or failure to reverse on the previous error in granting a new trial would preclude further inquiry, of course, and it would affirm by the exigencies of the case the first order, because the point was *necessarily* decided. 30 Miss. 66.

But where the writ of error brings up the case for error in the final judgment, and there is assigned error in that proceeding and also error in a previous interlocutory order granting a new trial, the reversing court may well order another trial without acting on the error assigned as to the interlocutory order for reasons growing out of the developments in the second trial. We have the instance where the court looked into the evidence on the second trial for reasons to show that the first order of the court had tended to subserve the ends of justice. The third trial convinced the court here that to send the case back for another trial could not lead to any legal result other than that attained by the first verdict in the case, and having set aside the last judgment and verdict, it declined to award a *venire de novo,* because it saw nothing in the way of a final judgment but the erroneous interlocutory order granting a new trial on a just verdict sustained by

evidence, and proceeded to reverse that and give judgment on the first verdict.

We think the practice right; that is to say, that the court might fairly allow another trial to take place and decline to pronounce finally on the interlocutory order without precluding itself from considering the error when the repeated sifting of the facts has exposed the mischief of further litigation.

It is not true in practice nor in principle that the court must be considered as passing finally on all points assigned or arising on a record when the record is before it. It exercises a liberal discretion to reserve questions and to decline to consider certain points until the case is more fully developed. This is true of every point not of necessity decided and not actually decided.

It often decides the case on some one point deemed sufficient for the aspect of the case then presented, and when it does not notice an assignment of error it by no means follows that it may not again be assigned, or, if the court sees fit, acted on. This is certainly proper as to interlocutory matters where the final result may render it unnecessary to notice them. The court might well suppose that its rulings and directions would secure a correct result on another trial on the reasons on which writs of error are refused to interlocutory orders, such as new trials, etc.

At all events, such action would at most be error in point of law, an erroneous legal conclusion for which there is certainly no remedy except by means of a reargument applied for in due time. There is no jurisdictional question here. It was at most an erroneous exercise of power.

If it was a case in which the objection of *res judicata* was proper to be made, it was made in the usual form, plainly by the counsel in his reply to the plaintiff's demand in the assignment of errors, and to the brief asking the judgment in practice *res judicata* is set up in this court in no other way, and so we interpose *res judicata* to the *res judicata*.

Even in courts of original jurisdiction the modern rule is that the point must have been necessarily decided by the very stress of the contestation; but this, for reasons already stated, was not the case. It is competent to show by the record and even by extraneous evidence that the point was or was not decided. Here it is conceded that it was not adjudicated on the former writ.

The writ of error *ceram nobis* is barred. The judgment is

plainly not a nullity. If a nullity, then the parties must in some form, as they may, bring it into contest in courts of original jurisdiction in which it may be sought to be enforced.

But it seems to us that under the constraint of duty *ut sit finis litium* the court in 1875 did right to cut short a mischievous and baffling litigation. The error was in the record and its correction plainly called for in the case as it stood developed. There was no surprise.

The case has been in some of its bearings twice before this court on proceedings to enforce the judgment rendered here, and no attempt was made to assail the judgment for want of jurisdiction or power to render it.

OPINION.—CAMPBELL, J.:

The final settlement in the Probate Court by the Messrs. Buie, as executors, did not constitute a bar to the claim of the creditor, who has a judgment against them as such, that they should have applied the ample assets of the testator which were in their hands to the payment of such claim, and that for not doing so they were guilty of a *devastavit*. It is manifest that they had received to their own use from the estate largely more than enough to pay the judgment. Their first duty was to pay all claims established against the estate. They have no right to retain anything received by them as legatees or distributees as against the creditor of their testator. They are victims of an unfortunate combination of circumstances. Soon after they qualified as executors the statute in reference to the presentation of claims against the decedent was suspended. The estate was large and solvent. They made distribution speedily and a final settlement in 1865, all long before the expiration of the time given by law for the presentation of claims. Afterwards, and before the suspension of the statute of limitations had expired, suit was brought against the executors, which terminated in the judgment which is sought to be enforced in this suit. The creditor should not be made to lose because of anything occurring at a time when he was in no default for not asserting his demand. It has been adjudicated in Pollock *v.* Buie, executors, 43 Miss. 140, that the action was maintainable notwithstanding the final settlement of the executors, and that must be considered as finally settled in this suit.

The refunding bonds were not a bar to the proceeding by the

creditor against the executors and sureties on their bond for a *devastavit*.  These bonds were designed as a security for creditors thereafter proving claims, but in no manner affected the right of creditors to proceed for a *devastavit*.  The judgment rendered by this court 1st February, 1875, and assailed in this case as void, was not void.  There was no want of jurisdiction of the parties or the subject matter.  The parties were properly before the court, and the subject was the exercise of the appellate jurisdiction of this court in a case cognizable by it and properly before it.  If it be admitted that the court improperly pronounced judgment on the first verdict because that was *res adjudicata* on the disposition of the case in the former writ of error, no more can be said of it than that it was erroneous thus to do.  It does not go to the jurisdiction of the court, but to the propriety of the action of the court, as matter of practice.  It is a question of error or not, and, if conceded to be erroneous, is not the subject of correction now, in this proceeding or any other.  John M. Buie, administrator of the estate of Daniel Buie, deceased, who was a surety on the bond of the executors of Neil Buie, deceased, was not freed from liability to be sued as such administrator by his final settlement as held in Pollock, admr.; *v.* Buie et al., 43 Miss. 140, which we are not now disposed to disturb.  He cannot justly complain of the application of the rule in this case, for he knew of the liability of his intestate, as a surety on the bond of the executors of Neil Buie, deceased, and of the suit of Pollock against those executors, before he made his final settlement, which he now pleads as a bar to this suit against him as administrator.

We have carefully considered this case in every view presented by counsel, or which has occurred to us, and can find no error in the record, and the decree is

*Affirmed.*